1
2
3
4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7     HAROLD VILLANUEVA,                      Case No.  13-cv-05390-HSG

              Plaintiff,
8                                             **ORDER GRANTING PRELIMINARY
                                              APPROVAL OF CLASS ACTION
9          v.                                 SETTLEMENT**

10    MORPHO DETECTION, INC,                   Re: Dkt. No. 62

              Defendant.
11

12          Before the Court is Plaintiff Harold Villanueva's Amended Motion for Preliminary

13   Approval of the Class Action Settlement agreed upon in this case.  *See* Dkt. No. 62 ("Mot").  After

14   careful consideration of the settlement agreement and the parties' arguments, the Court **GRANTS**

15   Plaintiff's motion for preliminary approval.

16   **I.     BACKGROUND**

17        **A.     Litigation History**

18          Morpho Detection, Inc. ("Morpho") is a security company that provides explosives,

19   narcotics, and radioactive detection services in aviation and other transportation facilities.  This

20   action began on November 20, 2013, when Villanueva, an employee of Morpho, filed the original

21   Complaint on behalf of himself and those similarly situated, alleging violations of California's

22   wage and hour laws and regulations.  Dkt. No. 1.  Villanueva filed a First Amended Complaint

23   ("FAC") on February 19, 2014, Dkt. No. 22, the Second Amended Complaint ("SAC") on May

24   26, 2014, Dkt. No. 34, and the Third Amended Complaint ("TAC") on April 16, 2015, Dkt. No.

25   55.  The putative class is comprised of all current and former non-exempt Field Service

26   Technicians, Field Service Technician Leads, Field Service Engineers, and Field Service Engineer

27   Leads employed by Morpho from Nov. 20, 2009 through Dec. 12, 2014.

28          The TAC alleges eight causes of action on behalf of Villanueva and the putative class: (1)

United States District Court
Northern District of California

Failure to Compensate for All Hours Worked (Cal. Labor Code and IWC Wage Order 9-2001); (2) Failure to Provide Meal and Rest Periods (Cal. Labor Code §§ 226.7, 512, IWC Wage Order 9-2001); (3) Failure to Furnish Wage and Hour Statements (Cal. Labor Code §§ 226 and 226.3); (4) Failure to Maintain Employee Time Records (Cal. Labor Code § 1174); (5) Failure to Timely Pay Final Wages (Cal. Labor Code §§ 201 et seq.); (6) Failure to Pay Wages in Violation of the FLSA (29 U.S.C. §§ 201 et seq.); (7) Unfair Competition (Cal. Business and Professions Code §§ 17200 et seq.); and (8) penalties under the Private Attorney General Act (Cal. Labor Code §§ 2698 et seq.).

In September of 2014, the parties participated in a court-appointed ADR session facilitated by an experienced mediator.  Although no settlement was reached during that session, the parties continued settlement negotiations in the following weeks and eventually signed a Settlement Term Sheet and Memorandum of Understanding in December of 2014.

**B.    Overview of the Proposed Settlement**

Following the settlement in principle, the parties executed a Stipulation of Settlement (the "Settlement Agreement").  *See* Declaration of Leonard Emma ("Emma Decl."), Ex. 1.  The key provisions of the Settlement Agreement are as follows.

Payment Terms:  In full settlement of the claims asserted in this lawsuit, Morpho agrees to pay $245,000.

Allocation Method:  Payments to Qualified Claimants shall be made on a pro rata basis based on Work Weeks.  Each individual Qualified Claimant's payment shall be calculated by counting the total number of Work Weeks all Class Members worked during the Class Period (which becomes the denominator), and dividing by the number of Work Weeks each individual Qualified Claimant worked during the Class Period (which becomes the numerator), then multiplying by the Net Settlement Fund amount.  If the total number of Work Weeks for all Class Members within the Class Period exceeds 8,500, then Defendant agrees to increase the value of the total Gross Settlement Amount by $20.00 for every Work Week in the Class Period above 8,500 to avoid or minimize any resulting dilution of payments to the Qualified Claimants.

Attorneys' Fees and Costs:  The Settlement Agreement authorizes Plaintiff's counsel to

apply to the Court for an award of attorneys' fees and costs incurred in litigating this case.
Plaintiff's counsel requests an amount no greater than 25% of the Settlement Amount, plus
reimbursement of costs and expenses, which class counsel represent will be no more than $2,500.
*Id.*

Incentive Payment:  The Settlement Agreement provides that Plaintiff's counsel will
petition the Court for approval of payments of no more than $2,500 for Mr. Villanueva.

Releases:  Class members who do not opt out of the Settlement release all claims that are
pled in the operative complaint (or claims that are reasonably related to claims that are pled in the
operative complaint) through and including December 13, 2014.

Procedure for Claims and Settlement:  Class members must either opt in, out, or object to
the settlement within thirty days.

Unclaimed Settlement Funds:  The Settlement Agreement is non-reversionary.  Unclaimed
funds will be donated to the Legal Aid Society of San Mateo pursuant to the *cy pres* doctrine.

Objections:  Any Class Member who has not opted out may file an objection to the
Settlement Agreement (or any of its terms).

## II.    CONDITIONAL CLASS CERTIFICATION

Class certification under Rule 23 is a two-step process.  First, a plaintiff must demonstrate
that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and
adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous
analysis,' that Rule 23(a) has been satisfied."  *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829,
833 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).
Second, a plaintiff must establish that one of the bases for certification in Rule 23(b) is met.  Here,
by invoking Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class
members predominate over any questions affecting only individual members, and . . . [that] a class
action is superior to other available methods for fairly and efficiently adjudicating the
controversy."  Fed. R. Civ. P. 23(b)(3).  The party seeking class certification bears the burden of
demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at
least one of the three requirements under Rule 23(b) are met.  *See Wal-Mart*, 131 S. Ct. at 2551.

United States District Court
Northern District of California

1

United States District Court
Northern District of California

### A.      Rule 23(a)(1)—Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Numerosity is satisfied here because the proposed settlement class includes over fifty potential members.  Joinder of all the estimated class members would be impracticable in this action.

### B.      Rule 23(a)(2)—Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  For the purposes of Rule 23(a)(2), even a single common question is sufficient.  *Wal-Mart*, 131 S. Ct. at 2556.  The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 2551.  "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (emphasis in original) (citation omitted).

The Court finds that the proposed class satisfies the commonality requirement because, at a minimum, the existence of Morpho's alleged policies and practices concerning overtime and meal break/rest periods implicate the class members' claims as a whole.

### C.      Rule 23(a)(3)—Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Id.* (citation omitted).

The Court finds that class representative Villanueva is typical of the class he seeks to represent.  Like the rest of the settlement class, Villanueva alleges that he worked for Morpho

United States District Court
Northern District of California

1    during the time period when Morpho allegedly carried out the misconduct alleged in this action.

2        **D.**    **Rule 23(a)(4)—Adequacy of Representation**

3          "The adequacy of representation requirement . . . requires that two questions be addressed:

4    (a) do the named plaintiffs and their counsel have any conflicts of interest with other class

5    members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on

6    behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  The

7    requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)."

8    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v.*

9    *Falcon*, 457 U.S. 147, 158 n.13 (1982)).  Among other purposes, these requirements determine

10   whether "the named plaintiff's claim and the class claims are so interrelated that the interests of

11   the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at

12   158 n.13.  Adequacy of representation requires two legal determinations: "(1) do the named

13   plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

14   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*

15   *v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)

16         No evidence in the record suggests that the class representative or counsel have a conflict

17   of interest with other class members.  Plaintiff's counsel has substantial experience prosecuting

18   employment class actions.  *See* Emma Decl. at ¶ 26.  The Court finds that proposed class counsel

19   and the named plaintiff have prosecuted this action vigorously on behalf of the class, and will

20   continue to do so.  The adequacy requirement is therefore satisfied.

21       **E.**    **Rule 23(b)(3)—Predominance and Superiority**

22         To certify a Rule 23 damages class, the Court must find that "questions of law or fact

23   common to class members predominate over any questions affecting only individual members,

24   and . . . [that] a class action is superior to other available methods for fairly and efficiently

25   adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether

26   proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*,

27   521 U.S. at 623. "When common questions present a significant aspect of the case and they can be

28   resolved for all members of the class in a single adjudication, there is clear justification for

1    handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at

2    1022 (citation omitted).

3         Here, the Court finds that—for the purposes of settlement—the common questions raised

4    by Villanueva's claims predominate over questions affecting only individual members of the

5    proposed class.  In particular, Villanueva alleges that Morpho enforced overtime and meal

6    break/rest period policies that violated California law.  Whether this allegation has a basis in fact

7    is a common question that would largely resolve the claims of all class members.  The

8    predominance requirement is therefore satisfied.

9         Next, "[t]he superiority inquiry under Rule 23(b)(3) requires the Court to determine

10   whether the objectives of the particular class action procedure will be achieved in the particular

11   case."  *Id*. at 1023.  Here, because common legal and factual questions predominate over

12   individual ones, and taking into account the size of the proposed class, the Court finds that the

13   judicial economy achieved through common adjudication makes a class action a superior method

14   for adjudicating the claims of the proposed class.

15        Finally, while not enumerated in Rule 23, "courts have recognized that 'in order to

16   maintain a class action, the class sought to be represented must be adequately defined and clearly

17   ascertainable.'"  *Vietnam Veterans of Am. v. C.I.A*., 288 F.R.D. 192, 211 (N.D. Cal. 2012)

18   (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)); *see also Berger v. Home*

19   *Depot USA, Inc.*, 741 F.3d 1061, 1071, n.4 (9th Cir. 2014) (referring, in dicta, to the "threshold

20   ascertainability test").  "[A] class definition is sufficient if the description of the class is 'definite

21   enough so that it is administratively feasible for the court to ascertain whether an individual is a

22   member.'"  *Vietnam Veterans*, 288 F.R.D. at 211 (quoting *O'Connor v. Boeing N. Am., Inc*., 184

23   F.R.D. 311, 319 (C.D. Cal. 1998)).

24        Courts have considered at least three types of "ascertainability" concerns when

25   determining whether class certification is appropriate: (1) whether the class can be ascertained by

26   reference to objective criteria; (2) whether the class includes members who are not entitled to

27   recovery; and (3) whether the putative named plaintiff can show that he will be able to locate

28   absent class members once a class is certified.  *See Lilly v. Jamba Juice Co.*, 2014 WL 4652283, at

United States District Court
Northern District of California

1  *3-4 (N.D. Cal. Sept. 18, 2014).  The proposed class in this case does not present any of these

2  concerns.  Morpho will provide the claims administrator the names, last known address and

3  applicable employment dates for each of the estimated 53 class members.  Mot. at 23.  This

4  information will allow the claims administrator to identify and locate class members with

5  sufficient confidence to satisfy the ascertainability requirement.

6  **F.    Appointment of Class Representatives and Class Counsel**

7  Because the Court finds that Villanueva meets the commonality, typicality, and adequacy

8  requirements of Rule 23(a), the Court appoints Plaintiff as class representative.  When a court

9  certifies a class, the court must appoint class counsel and must consider:

> (i)    the work counsel has done in identifying or investigating potential
>        claims in the action;
> (ii)   counsel's experience in handling class actions, other complex
>        litigation, and the types of claims asserted in the action;
> (iii)  counsel's knowledge of the applicable law; and
> (iv)   the resources that counsel will commit to representing the class.

14  Fed. R. Civ. P. 23(g)(1)(A).  Additionally, a court "may consider any other matter pertinent to

15  counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P.

16  23(g)(1)(B).

17  Plaintiffs' counsel have prosecuted this action by: (1) investigating class members'

18  potential claims; (2) propounding and reviewing discovery; (3) participating in a mediation; (4)

19  negotiating this Settlement Agreement; and (5) briefing the instant motion for preliminary

20  approval.  Plaintiff's counsel has substantial prior experience prosecuting employment actions.

21  *See* Emma Decl. at ¶ 26.  For these reasons, the Court will appoint Michael Hoffman of Hoffman

22  Employment Lawyers as lead class counsel pursuant to Federal Rule of Civil Procedure 23(g).

23  **III.   PRELIMINARY APPROVAL**

24  Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a

25  certified class may be settled, voluntarily dismissed, or compromised only with the court's

26  approval."  The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of

27  class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "The

28  purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair

settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a court approves a settlement it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

In general, the district court's review of a class action settlement is "extremely limited." *Hanlon*, 150 F.3d at 1026. However, where the parties reach a class action settlement prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007); *see also Alvarado v. Nederend*, No. 08-cv-01099 OWW DLB, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (granting preliminary approval of settlement in wage and hour class action); Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the fairness of the proposed settlement, including a determination that there are no obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys . . . ."). The Court considers the settlement as a whole, rather than its components, and lacks the authority to "delete, modify or substitute certain provision." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir.1982)). Rather, "[t]he settlement must stand or fall in its entirety." *Id.*

United States District Court
Northern District of California

### A.    The Settlement Process

The first factor the Court examines is the means by which the parties arrived at the settlement.  "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."  *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted).  Here, the parties reached their settlement after mediation before an impartial mediator, which strongly suggests the absence of collusion or bad faith by the parties or counsel.  *See Chun-Hoon v. McKee Foods Corp*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *see also Satchell v. Fed. Exp. Corp.*, No. 03-cv-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### B.    Obvious Deficiencies

The second factor the Court considers is whether there are obvious deficiencies in the Settlement Agreement.  The Court finds no obvious deficiencies in the Settlement Agreement.

### C.    Preferential Treatment

Under the third factor, the Court examines whether the Settlement Agreement provides preferential treatment to any class member.  The proposed *pro rata* plan of allocation based on each class member's share of weeks worked appears to compensate class members in a manner generally proportionate to the harm they suffered on account of Morpho's alleged misconduct.  While the Settlement Agreement authorizes Villanueva to seek an incentive award of $2,500 for his role as named plaintiff in this lawsuit, the Court will ultimately determine whether he is entitled to such an award and the reasonableness of the amount requested.  The Ninth Circuit has recognized that incentive awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable.  *See Stanton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958-69 (9th Cir. 2009).

### D.    Whether the Settlement Falls Within the Range of Possible Approval

Finally, the Court must consider whether the Settlement Agreement falls within the range of possible approval.  "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery

9

balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp.2d at 1080) (internal quotations omitted).  Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of  a governmental participant; and (8) the reaction of class members to the proposed settlement. *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).  Although the Court undertakes a more in-depth investigation of the foregoing factors at the final approval stage, these factors inform whether the Settlement Agreement falls within the "range of possible approval."

The Court first considers the class' expected recovery balanced against the value of the settlement offer, taking into account the strength of the plaintiff's case.  The settlement provides $245,000, which counsel represents to be approximately 35% of Morpho's maximum potential exposure.  Mot. at 12.  Plaintiff argues that this is a fair compromise within the range of reasonableness given Morpho's defenses. *Id*.  The Court agrees.  The parties' submissions evidence that Morpho has several significant defenses to liability, which could substantially reduce the class members' recovery (or preclude it entirely).  The 35% figure is sufficient for the Court to grant preliminary approval given the merits of Plaintiff's claims.

Second, the settlement amount is adequate given the expense, complexity, and duration of further litigation.  In order to prevail in this action, Villanueva would be required to successfully move for class certification, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal.  The risks and costs associated with class action litigation weigh strongly in favor of settlement.

The third factor concerning whether class certification can be maintained through trial also weighs in favor of settlement.  Certifying a class of 53 employees presents complex issues that could undermine certification at many different stages of the litigation.

United States District Court
Northern District of California

1    Fourth, the $245,000 settlement amount, while constituting only 35% of the class

2    members' maximum potential exposure, is reasonable given the stage of the proceedings and the

3    defenses asserted in this action.

4    Fifth, the parties have undertaken sufficient discovery to inform their view of the

5    reasonableness of the Settlement Agreement.

6    The sixth factor takes into account counsel's experience and their respective views of the

7    Settlement Agreement.  The Court has previously evaluated class counsel's qualifications and

8    experience and concluded that counsel is qualified to represent the class' interests in this action.

9    The Court notes, however, that courts have taken divergent views as to the weight to accord

10   counsel's opinions.  *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal.

11   May 11, 2010) ("Counsel's opinion is accorded considerable weight.") *with Chun-Hoon*, 716 F.

12   Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as

13   parties to class actions and their counsel often have pecuniary interests in seeing the settlement

14   approved.").  The Court finds that this factor tilts in favor of approval, even though the Court

15   affords only modest weight to the views of counsel.

16   The seventh factor is inapplicable because there is no governmental participant in this case.

17   Eighth, because the class has not yet been formally notified of the settlement, the Court

18   cannot undertake any evaluation of class members' reaction to the settlement, including the

19   number and substance of any objections.

20   Having weighed these eight factors, the Court finds that the Settlement Agreement falls

21   within the range appropriate for preliminary approval.

22   **IV.    PROPOSED CLASS NOTICE AND NOTIFICATION PROCEDURES**

23   The class notice in a Rule 23(b)(3) class action must comport with the requirements of due

24   process.  "[T]he plaintiff must receive notice plus an opportunity to be heard and participate in

25   litigation, whether in person or through counsel."  The notice must be "the best practicable,"

26   "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of

27   the action and afford them an opportunity to present their objections." *Philips Petroleum Co. v.*

28   *Shutts*, 472 U.S. 797, 812 (1985) (citations omitted).  "The notice should describe the action and

United States District Court
Northern District of California

11

1    the plaintiffs' rights in it." *Id*. Rule 23(c)(2)(B) provides, in relevant part:

2           The notice must clearly and concisely state in plain, easily
            understood language: (i) the nature of the action; (ii) the definition
3           of the class certified; (iii) the class claims, issues, or defenses; (iv)
            that a class member may enter an appearance through an attorney if
4           the member so desires; (v) that the court will exclude from the class
            any member who requests exclusion; (vi) the time and manner for
5           requesting exclusion; and (vii) the binding effect of a class judgment
            on members under Rule 23(c)(3).
6

7    Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from

8    the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Id.*

9           The parties propose to use Gilardi & Co. LLC ("Gilardi") as the settlement administrator

10   for the class.  The Court finds that Gilardi is qualified to perform the tasks associated with

11   administering the notice and claims procedures outlined in the Settlement Agreement and

12   therefore approves Gilardi as the settlement administrator.  Gilardi will, among other tasks,

13   provide notice, calculate awards, process requests for exclusion and objections, and mail class

14   members their settlement awards.  The proposed notice contains all the information required under

15   the Federal Rules and, accordingly, the Court finds notice plan comports with due process

16   requirements.[1]

17   **V.    NOTICE OF MOTION AND AWARD OF ATTORNEYS' FEES AND COSTS**

18          The settlement notice informs class members that class counsel will file a motion seeking

19   an award of attorneys' fees in the amount of 25% of the total $245,000 settlement amount, plus

20   their out-of-pocket expenses not to exceed $2,500.  Mot at 5.  To enable class members to review

21   class counsel's motion, class counsel shall include language in the settlement notice indicating the

22   deadline for filing the attorneys' fees motion, specifically stating the deadline for any class

23   member objections to the fees motion, and informing class members that the motion and

24   supporting materials will be available for viewing on class counsel's website.  *See In re Mercury*

25   *Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010) (holding that under Rule 23(h),

26

27   _____

[1] Page four of the notice lists the address of the Federal Courthouse in Oakland California as the
address to which objections should be mailed.  *See* Dkt. No. 63-1 at 46.  The parties must amend
28   the notice to reflect the address of the Federal Courthouse in San Francisco before notices are
     mailed.

United States District Court
Northern District of California

class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).  That motion shall be filed with the Court and posted on class counsel's website not later than 20 days before class members' objections are due.

**VI.    SETTLEMENT APPROVAL SCHEDULE**

The parties are directed to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court along with a proposed order within seven days of this Order.

| Event | Date |
|---|---|
| Deadline to mail claim packets | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Last date to file objections | |
| Last date to submit claims | |
| Filing deadline for final approval motion | |
| Final Fairness hearing and hearing on motions | |

**VII.   CONCLUSION**

The Court **GRANTS** Plaintiff's Amended Motion for Preliminary Approval of the Class Action Settlement.  The parties are directed to comply with the instructions provided above.

**IT IS SO ORDERED.**

Dated:  August 12, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge