UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD VILLANUEVA,<br><br>          Plaintiff,<br><br>     v.<br><br>MORPHO DETECTION, INC,<br><br>          Defendant. | Case No. 13-cv-05390-HSG<br><br>**ORDER GRANTING MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT AWARD**<br><br>Re: Dkt. Nos. 69, 70, 71 |

Pending before the Court are three motions filed by Plaintiff Harold Villanueva: (1) motion for final approval of the parties' proposed class action settlement, Dkt. No. 71; (2) motion for attorneys' fees and costs, Dkt. No. 69; and (3) motion for class representative enhancement award, Dkt. No. 70. The Court held a final fairness hearing on the motions on January 14, 2016. Dkt. No. 72. For the reasons stated below and at the hearing, the Court GRANTS all three motions.

## I.   BACKGROUND

### A.   Litigation History

Morpho Detection, Inc. ("Morpho") is a security company that provides explosives, narcotics, and radioactive detection services in aviation and other transportation facilities. This action began on November 20, 2013, when Villanueva, an employee of Morpho, filed the original Complaint on behalf of himself and those similarly situated, alleging violations of California's wage and hour laws and regulations. Dkt. No. 1. Villanueva filed a First Amended Complaint ("FAC") on February 19, 2014, Dkt. No. 22, the Second Amended Complaint ("SAC") on May 26, 2014, Dkt. No. 34, and the Third Amended Complaint ("TAC") on April 16, 2015, Dkt. No. 55. The putative class is comprised of all current and former non-exempt Field Service Technicians, Field Service Technician Leads, Field Service Engineers, and Field Service Engineer

Leads employed by Morpho from Nov. 20, 2009 through Dec. 12, 2014.

The TAC alleges eight causes of action on behalf of Villanueva and the putative class: (1) Failure to Compensate for All Hours Worked (Cal. Labor Code and IWC Wage Order 9-2001); (2) Failure to Provide Meal and Rest Periods (Cal. Labor Code §§ 226.7, 512, IWC Wage Order 9-2001); (3) Failure to Furnish Wage and Hour Statements (Cal. Labor Code §§ 226 and 226.3); (4) Failure to Maintain Employee Time Records (Cal. Labor Code § 1174); (5) Failure to Timely Pay Final Wages (Cal. Labor Code §§ 201 et seq.); (6) Failure to Pay Wages in Violation of the FLSA (29 U.S.C. §§ 201 et seq.); (7) Unfair Competition (Cal. Business and Professions Code §§ 17200 et seq.); and (8) penalties under the Private Attorney General Act (Cal. Labor Code §§ 2698 et seq.).

In September of 2014, the parties participated in a court-appointed ADR session facilitated by an experienced mediator. Although no settlement was reached during that session, the parties continued settlement negotiations in the following weeks and eventually agreed to a settlement approximately three months later.

Plaintiff filed a motion for preliminary approval of the class action settlement agreement on April 17, 2015, Dkt. No. 56, and an amended motion for preliminary approval on May 8, 2015, Dkt. No. 62. The Court granted Plaintiff's amended motion on August 12, 2015. Dkt. No. 66.

In accordance with the court-approved notice plan, the appointed settlement administrator mailed class notices and claim forms to 53 settlement class members. Dkt. No. 71-1, Ex. 2 ("Smith Decl.") ¶ 4. Although two notice packets were initially returned as undeliverable, the settlement administrator was able to locate updated addresses for the intended recipients and re-mail the notice. *Id.* ¶ 5. As of December 1, 2015, the settlement administrator had received thirty-four timely claim forms, as well as one late claim form, which the parties accepted. *Id.* ¶ 6. No class members opted out of the settlement, and no objections were filed. *Id.* ¶¶ 8-9.

**B.     Settlement Agreement**

The proposed settlement will dispose of all of Plaintiffs' claims against Defendant. Dkt. No. 63, Ex. 1 ("Settlement Agreement").  The Settlement Agreement defines the class as:

> all current and former non-exempt employees employed by Defendant in the State of California as a Field Service Technician, Field Service Technician Lead, Field Service Engineer, or Field Service Engineer Lead from November 20, 2009, through and including the Preliminary Approval Date.

*Id.* at 4.  Under the terms of the Settlement Agreement, Defendant will pay a gross settlement amount of $245,000.  *Id.* at 6.  From that gross amount, approximately $5,000 will be allocated to the settlement administration costs, and $7,500 will be paid to the California Labor & Workforce Development Agency as penalties under the Private Attorney General Act ("PAGA").  *Id.* at 14.  In addition, class counsel seeks $61,250 in attorneys' fees, up to $2,500 in attorneys' costs, and $2,500 as an enhancement award for Plaintiff.  *Id.* at 15, 17.

In exchange, settlement class members agree to release all claims that are pled in the operative complaint (or claims that are reasonably related to claims that are pled in the operative complaint) through and including December 13, 2014.  *Id.* at 27-29.  The Settlement Agreement further clarifies that the released claims do not include any claims for "retaliation, discrimination, unemployment insurance, disability, [or] workers' compensation."  *Id.* at 28.

Settlement class members who submit a claim will be entitled to a pro rata payment based on the number of work weeks worked.  *Id.* at 14.  If the total number of work weeks for all class members within the class period exceeds 8,500, then Defendant agrees to increase the value of the gross settlement amount by $20.00 for each excess work week to minimize any resulting dilution of payments.  *Id.* at 14-15.  The Settlement Agreement is non-reversionary, and any unclaimed funds will be donated to the Legal Aid Society of San Mateo.  *Id.* at 27.

**II.     DISCUSSION**

**A.     Motion for Final Approval of Class Action Settlement**

**1.     Legal Standard**

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a

hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess whether a proposed settlement comports with Rule 23(e), a district court must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Id.* When making this decision, courts consider the following factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.* at 1025.

### 2. Adequacy of Notice

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, the class claims, class members' right to exclude themselves from the class, and the binding effect of any class judgment. Fed. R. Civ. P. 23(c)(2)(B). Additionally, before granting final approval of a proposed class settlement, a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* 23(e)(1). While Rule 23 requires that "reasonable effort" be made to reach all class members, it does not require that each individual actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010).

The Court previously approved the notice and notice plan proposed by the parties. Dkt. No. 66 at 11-12. In accordance with the Court's orders, the settlement administrator mailed the approved notice to 53 class members. Smith Decl. ¶ 4. Although two notice packets were initially returned as undeliverable, the settlement administrator was able to locate updated addresses for the intended recipients and re-mail the notice. *Id.* ¶ 5. More than 66% of class members submitted

1  claim forms. *Id.* ¶ 6. In light of these facts, the Court finds that the notice and notice procedures
2  used here complied with the requirements of Rule 23(e).

### 3. Fairness, Adequacy, and Reasonableness of Settlement

Having found the notice procedures adequate, the Court next considers whether the settlement as a whole comports with Rule 23(e).

#### a. Strength of Plaintiff's Case & Risk of Continued Litigation

Approval of a class settlement is appropriate when plaintiffs must overcome "significant barriers" to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotation marks omitted).

While Plaintiff maintains that he would be likely to prevail on the merits of his case, he faces substantial challenges in continued litigation. First, it is not clear that Plaintiff could successfully maintain class certification throughout the litigation. Defendant argues that Plaintiff's claims require individualized consideration because the class members worked at different locations and reported to different supervisors. If individualized issues pervade the factual analysis such that no common questions of law or fact exist, class certification cannot be maintained. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556-57 (2011).

Second, even if Plaintiff successfully certified a class, he would face obstacles to prove liability. Defendant asserts that its policies and practices regarding overtime and meal and rest break periods comply with California law. Moreover, Defendant argues that its employees, as a practical matter, managed their own time, including breaks. Finally, Plaintiff concedes that there is a "relative lack of written evidence" of the missed meal and rest breaks. Dkt. No. 71 ("Mot.") at

15.

Finally, even if Plaintiff prevailed, this litigation likely would have taken years to complete.

The Court finds that these factors weigh in favor of settlement.

### b. Settlement Amount

This factor "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the W.*, No. 13-cv-02376-EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks omitted).

Plaintiffs calculate that the gross settlement amount represents approximately 35% of the maximum recovery at trial, which in turn means that the net settlement amount represents approximately 24% of the maximum recovery. Mot. at 13. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement is within the range of reasonableness in light of the risks and costs of litigation. *See Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (granting final approval of a net settlement amount representing 13.6% of the plaintiffs' estimated maximum possible recovery at trial); *Stovall-Gusman v. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' estimated maximum recovery at trial).

Additionally, the parties' proposed *cy pres* recipient, the Legal Aid Society of San Mateo County, is "tethered to the nature of the lawsuit and the interests of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). As a non-profit, Legal Aid provides

free legal services to low-income residents across San Mateo County, where Plaintiff's claims allegedly arose. Dkt. No. 75 at 2. Additionally, Legal Aid assists pro bono clients on matters in the area of employment. Dkt. No. 75 at 2. For example, "[i]n the past two years, Legal Aid has assisted more than 100 immigrants to obtain employment authorization, [which] results in minimizing their exposure to workplace exploitation, including wage and hour issues." *Id.* The Court finds that such work addresses the objectives of the underlying action and is connected to the members of the class. Accordingly, the Court finds that the required "driving nexus between the plaintiff statutes and the *cy pres* beneficiaries" exists here, *see Nachshin*, 663 F.3d at 1038, and that this factor weighs in favor of approval.

### c.  Stage of Proceedings

"This factor evaluates whether the parties have sufficient information to make an informed decision about settlement." *Larsen v. Trader Joe's Co.*, No 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014) (internal quotation marks omitted). "In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (internal quotation marks omitted). "Rather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Id.* (internal quotation marks omitted).

Here, prior to reaching a settlement, Plaintiff exchanged written discovery with Defendant, reviewed thousands of documents, sat for a full day of deposition, and conducted substantial investigation. Dkt. No. 71-1 ¶ 3. The Court finds that Plaintiff had an adequate understanding of the merits of his case before settlement negotiations began. Accordingly, this factor weighs in favor of approval.

### d.  Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the class'

interests in this action. Dkt. No. 66 at 7. The Court notes, however, that courts have taken divergent views as to the weight to accord counsel's opinions. *Compare Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved."). The Court finds that this factor tilts in favor of approval, even though the Court affords only modest weight to the views of counsel.

### e. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). A small number of objections to and opt-outs from a settlement "presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027.

Here, the overwhelming majority of settlement class members reacted favorably to the proposed settlement. As of December 1, 2015, the settlement administrator had received thirty-four timely claim forms, as well as one late claim form, which the parties accepted. Smith Decl. ¶ 6. In other words, more than 66% of the class members submitted claim forms. No class members opted out of the settlement, and no objections were filed. *Id.* ¶¶ 8-9.

The Court finds that this factor weighs in favor of approval.

\*       \*       \*

After considering and weighing all of the above factors, the Court finds that the proposed class action settlement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiffs' motion for final approval of class action settlement is granted.

### B. Attorneys' Fees & Costs

Class counsel requests an award of $61,250 in fees and $1,377.57 in costs.

8

### 1. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Because California law governed the claim here, it also governs the award of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under California law, "the award of attorney fees is proper . . . if (1) plaintiffs' action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 317-18 (1983) (internal quotation marks omitted). Based on these criteria, and the parties' agreement, the Court finds that class counsel is entitled to attorneys' fees.

Additionally, class counsel is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted).

### 2. Class Counsel's Request for Fees

Under California law, courts have the power to award reasonable attorneys' fees and costs where, as here, a litigant proceeding in a representative capacity secures a "substantial benefit" for a class of persons. *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977). The two primary methods for determining reasonable fees in the class action settlement context are the "lodestar/multiplier" method and the "percentage of recovery" method. *See Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 254 (2001); *accord Hanlon*, 150 F.3d at 1029.

The Court first considers the lodestar method. The first step in the lodestar analysis is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly billing rate. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004); *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may apply a multiplier to the lodestar if warranted after the consideration of certain enhancement factors like (1) the results obtained; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill

necessary to litigate the case; (4) the preclusion of other employment due to acceptance of the case; and (5) whether the fee is fixed or contingent. *See Serrano*, 20 Cal. 3d at 48.

Here, class counsel calculated total lodestar fees of $75,830 based on approximately 200 total hours worked. *See* Dkt. No. 69 at 4; Dkt. No. 69-1, Ex. 1. The Court has reviewed class counsel's time records and finds that the number of hours devoted to this case was reasonable. The Court further finds that the billing rates used by class counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation.

Class counsel's fee request of $61,250 is less than the lodestar amount. Moreover, the propriety of the requested fee award is confirmed by a cross-check based on the percentage of the gross settlement amount obtained. The agreed-upon fee here represents 25% of the cash value of the settlement, which equals the "benchmark" percentage applied in the Ninth Circuit. The Court finds that the requested fee award is reasonable and therefore grants the request.

### 3. Class Counsel's Request for Costs

Class counsel has provided an itemized list of the costs incurred during this litigation, separated by category. Dkt. No. 73. The Court has thoroughly reviewed the submitted records and finds the requested costs award of $1,377.57 reasonable.

### 4. Plaintiffs' Incentive Award

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The district court must evaluate a plaintiff's incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977 (internal quotation marks omitted). In the Ninth Circuit, a $5,000 incentive award is "consistent with the amount courts typically award as incentive payments." *In re Toys-R-Us Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter,

$5,000 is a reasonable amount.").

Plaintiff requests a service award of $2,500. In the course of this litigation, Plaintiff helped class counsel investigate the claims, connected class counsel with putative class members, helped respond to written discovery, sat for a full-day deposition, and attended a full-day ADR session. Dkt. No. 70-1 ¶ 3. Moreover, Plaintiff subjected himself to public attention and potential retaliation by acting as named plaintiff. In light of Plaintiff's service to the class, the Court finds that the requested service award is fair and reasonable.

### III.   CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Court grants final approval of the proposed settlement and plan of administration.

2. The Court awards class counsel $61,250 in attorneys' fees.

3. The Court awards class counsel $1,377.57 in costs.

4. The Court grants a service award of $2,500 to Plaintiff.

5. This action is hereby dismissed with prejudice, with each side to bear its own attorneys' fees and costs, except as provided in the Settlement Agreement.

6. The parties shall file a proposed judgment within three days of the date of this Order.

**IT IS SO ORDERED.**

Dated: 3/18/2016

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge